UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  X

VERIFONE, INC.,

      Plaintiff,

  -against-

COASIN LOGICALIS S.A.,

      Defendant.

Case No.:

**COMPLAINT**

Plaintiff VeriFone, Inc. ("Verifone"), for its Complaint against Defendant Coasin Logicalis S.A. ("Coasin"), alleges as follows:

## INTRODUCTION

1.    This action arises out of the Verifone International Partner Agreement ("VIP Agreement" or "Agreement") between Verifone, an international provider of electronic payment products and services, and Coasin, its former Chilean distributor.  A copy of the VIP Agreement without appendices is attached hereto as **Exhibit A**.

2.    Among other things, the VIP Agreement requires the parties to submit "any dispute, claim, or controversy arising out of or relating in any way" to the Agreement or its subject matter to binding arbitration in the Southern District of New York.  Coasin relied on this provision in the VIP Agreement when it recently initiated arbitration against Verifone before JAMS in New York, New York (the "Arbitration"), thereby conceding that its claims fall within the scope of the VIP Agreement's broad arbitration provision.  Exh. A, § 16.3.

3.    Notwithstanding the foregoing, immediately after the arbitrator declined to grant Coasin's interim request for injunctive relief—through which Coasin attempted to block Verifone from serving its customers in Chile—Coasin initiated a separate, parallel lawsuit against Verifone in Santiago, Chile (the "Chilean Action") in violation of the VIP Agreement.  In

the Arbitration and in the Chilean Action, Coasin alleges substantially identical claims, based on the same alleged conduct and seeking the same damages and other relief.  Worse still, Coasin is actively seeking preliminary injunctive measures in the Chilean Action in an attempt to bar Verifone from doing business in Chile and isolate Verifone customers from any service or support, all before Coasin has even served Verifone with the Chilean Complaint.

4. Verifone seeks an anti-suit injunction and equitable relief against Coasin, enjoining Coasin from prosecuting the Chilean Action against Verifone and compelling Coasin to dismiss its claims against Verifone in that action.  This relief is necessary to prevent the deprivation of Verifone's contractual right to resolve its dispute with Coasin in the contracted forum, avoid the possibility of inconsistent judgments, and prevent immediate, irreparable harm to Verifone's reputation and market share in Chile.

## THE PARTIES

5. Verifone is and at all relevant times has been a Delaware corporation that maintains its headquarters and principal place of business in San Jose, California.

6. On information and belief, Coasin is and at all relevant times has been a company formed under the laws of Chile with its principal place of business in Santiago, Chile.  On information and belief, Coasin was formerly known as Coasin Chile S.A.

## JURISDICTION AND VENUE

7. This Court has diversity jurisdiction under 28 U.S.C. § 1332 because:  (1) Verifone is incorporated in Delaware and headquartered in San Jose, and Coasin is a Chilean entity headquartered in Chile; and (ii) the value of declaratory and injunctive relief sought, the value of Verifone's rights this action will protect and enforce, and the extent of the injury to be prevented exceed the amount of $75,000, exclusive of costs and interests.  *See* 28 U.S.C. § 1332(a)(2).

8. This Court has personal jurisdiction over Coasin because, pursuant to section 16.3 of the VIP Agreement, Coasin consented to the "personal and exclusive jurisdiction in the state and federal courts in the Southern District of New York."

9. Venue is proper because Verifone and Coasin consented to resolve their disputes in this district.

## BACKGROUND

10. Verifone is a multinational business that designs, manufactures, markets, supplies, and sells electronic payment products and provides related services. Its products include point-of-sale payment terminals and associated software and solutions that enable credit and debit card transactions.

11. Verifone is one of the world's largest point-of-sale terminal vendors, and its products are sold in over 150 countries. In many foreign countries, Verifone distributes and sells its products and services to its customers directly through a local related entity. However, in some select countries mainly representing smaller markets, Verifone contracts with one or more local resellers to sell and distribute its products and services.

12. Coasin provides information and communication technology outsourcing services and solutions (which it refers to as its "Business Solutions" line of business) and mining operations (which it refers to as its "Mining Solutions" line of business). Among other things, it offers its customers services and solutions related to electronic payment systems.

13. Until recently, Coasin acted as a "value-added reseller" for Verifone, promoting, marketing, selling, sub-licensing, and supporting Verifone's products and services in Chile. This relationship was governed by the VIP Agreement, which the parties entered into on or about October 20, 2014.

**The VIP Agreement's Arbitration Provision**

14. Section 16.3 of the VIP Agreement (the "Arbitration Provision") states:

> Governing Law and Severability: This Agreement and the rights of the parties hereunder shall be governed by and construed and interpreted in accordance with the Laws of the State of New York, exclusive of conflict or choice-of-1aw rules, ***and the parties hereby consent to the personal and exclusive jurisdiction in the state and federal courts in the Southern District of New York.***

>Notwithstanding the foregoing, except with respect to enforcing claims for injunctive or equitable relief, ***any dispute, claim, or controversy arising out of or relating in any way to this Agreement or the interpretation, application, enforcement, breach, termination, or validity thereof (including any claim of inducement of this Agreement by fraud and including determination of the scope or applicability of this agreement to arbitrate) or its subject matter (collectively, "Disputes") shall be determined by binding arbitration before one arbitrator.*** The arbitration shall be administered by JAMS conducted in accordance with the expedited procedures set forth in the JAMS Comprehensive Arbitration Rules and Procedures as those Rules exist on the effective date of this Agreement, including Rules 16.1 and 16.2 of those Rules. The arbitration shall be held in New York, New York, and it shall be conducted in the English language. The parties shall maintain the confidential nature of the arbitration proceeding and any award, including the hearing, except as may be necessary to prepare for or conduct the arbitration hearing on the merits, or except as may be necessary in connection with a court application for a preliminary remedy, a judicial challenge to an award or its enforcement, or unless otherwise required by law or judicial decision. The arbitrator shall have authority to award compensatory damages only and is not empowered to award any punitive, exemplary, or multiple damages, and the parties waive any right to recover any such damages. The parties acknowledge that this Agreement evidences a transaction involving interstate commerce. Notwithstanding anything to the contrary in this Agreement, any arbitration conducted pursuant to the terms of this Agreement shall be governed by the Federal Arbitration Act (9 U.S.C., Secs. 1-16). In any arbitration arising out of or related to this Agreement, the arbitrator shall award to the prevailing party, if any, the costs and attorneys' and experts' fees reasonably incurred by the prevailing party in connection with the arbitration. If the arbitrator determines a party to be the prevailing party under circumstances where the prevailing party won on some but not all of the claims and counterclaims, the arbitrator may award the prevailing party an appropriate percentage of the costs and attorneys' and experts' fees reasonably incurred by the prevailing party in connection with the arbitration. Judgment on any award in arbitration may be entered in any court having jurisdiction. Notwithstanding the above, each party shall have recourse to any court of competent jurisdiction to enforce claims for injunctive or other equitable relief. ***Nothing herein shall preclude parties from seeking provisional remedies in aid of arbitration from a court of appropriate jurisdiction.***

Exh. A, § 16.3 (emphasis added).

**Coasin Initiates Arbitration Against Verifone**

15. On or about April 29, 2019, Coasin—relying on and citing to the Arbitration Provision—initiated arbitration against Verifone before JAMS in the Southern District of New York (the "Arbitration"). A copy of Coasin's Demand for Arbitration and Application for Emergency Relief are attached hereto as **Exhibits B** and **C**, respectively.

16. Through its Demand for Arbitration and Application for Emergency Relief, Coasin has alleged claims against Verifone for: (1) breach of contract by terminating the VIP Agreement; (2) tortious interference with business relationships; (3) aiding and abetting breach of fiduciary duty; and (4) misappropriation of trade secrets. These claims stem from Coasin's allegations that Verifone improperly terminated the VIP Agreement and that it:

> …colluded with two senior [Coasin] executives (Ms. Ximena Oñate and Camilo Vidal) to gain access to Claimant's valuable proprietary information, recruit other employees of Claimant and undermine Claimant's relationships with its key customers, all in anticipation of the launch of its own Chilean business.

Exh. B.

17. Coasin demanded damages in excess of $50,000,000 for the loss of its business as a value-added reseller for Verifone. Coasin also demanded the following interim injunctive relief: (i) a declaration that Verifone's termination of the VIP Agreement is suspended and ineffective; (ii) an order requiring Verifone to continue performing under the VIP Agreement; (iii) an order that Verifone not disrupt or interfere with Coasin's business, including by approaching Coasin's clients and disparaging Coasin; and (iv) an order that Verifone not violate Coasin's rights under the VIP Agreement. *See*, *e.g.*, *id.*

18. On April 30, 2019, the day after Coasin initiated arbitration, counsel for the parties participated in a telephonic hearing regarding Coasin's Application for Emergency Relief with the Hon. Ariel E. Belen (Ret.), a JAMS arbitrator in New York, New York. The parties

subsequently exchanged emails and letters with the arbitrator, providing argument regarding the Application for Emergency Relief, and the arbitrator issued orders based on those arguments.

19.     On May 7, 2019, the arbitrator denied Coasin's request for an interim order requiring Verifone to refrain from communication with its Chilean customers while Coasin's Application for Emergency Relief was under consideration.  That same day, the parties agreed to stay the arbitration to discuss a potential resolution of their claims against each other.  During this stay, the parties provided periodic updates to the arbitrator.

### Despite Initiating Arbitration, Coasin Files Suit Against Verifone in Chile Based on the Same Claims Arising Out of the Same Operative Facts

20.     Despite submitting this matter to arbitration, Coasin filed a civil complaint in Santiago, Chile against Verifone, Ms. Ximena Oñate, and Mr. Camilo Vidal, on May 8, 2019— just one day after the arbitrator rejected Coasin's request for interim injunctive relief and the parties agreed to stay the Arbitration to discuss a potential negotiated resolution.  A copy of Coasin's complaint in the Chilean Action (the "Chilean Complaint"), along with a certified English translation thereof, are attached hereto as **Exhibits D-1** and **D-2**, respectively.  Coasin has not yet served Verifone with the Chilean Complaint.

21.     The Chilean Action, structured as one for "unfair competition," alleges substantially the same claims against Verifone as Coasin's Demand for Arbitration.  It is based on the same alleged facts and conduct, including Coasin's loss of the Verifone business governed by the VIP Agreement.  Like Coasin's Demand for Arbitration, the Chilean Complaint requests monetary damages of $35,757,050,000 Chilean pesos, the equivalent of approximately $50,000,000 USD.  Exh. D-2, p. 19.

22.     Notably, in the Chilean Complaint, Coasin acknowledges that it has already instituted arbitration in accordance with the laws of the State of New York.  *See* Exh. D-2, at ¶ 12.  It attempts to argue around arbitrability by stating that "this [Chilean] lawsuit does not seek to challenge the validity of the termination of the Agreement or non-compliance with the

provisions of the Agreement [*i.e.*, breach of contract], since that, as set forth in clause 16.3 of the Agreement, is subject to arbitration ….." *Id.*  Rather, according to Coasin, "the purpose of this lawsuit is that …Your Honour declares, in accordance with law, the existence of acts of unfair competition, …[and] order[s] the cessation and prohibition of them, the removal of their effects and the compensation of damages." *Id.*, ¶ 13.  However, the Chilean Complaint fails to mention that:  (1) Coasin has asserted claims for tortious interference, aiding and abetting breach of fiduciary duty, and trade secret misappropriation in the Arbitration, in addition to breach of contract; (2) Coasin seeks an order from the New York arbitrator requiring the "cessation and prohibition" of the very same alleged misconduct by Verifone identified in the Chilean Complaint; and (3) Coasin seeks the very same damages in the Arbitration that it seeks in the Chilean Action.

23. Indeed, the Chilean Complaint confirms that Coasin's Chilean claims are based on the same conduct as its claims in the Arbitration, describing the alleged acts underlying its claims against Verifone as follows:

> (a) ***forcing the termination of the Agreement in order to enter into competition with Coasin in Chile***; (b) receiving commercially sensitive information from Coasin from Fraudulent Managers [*i.e.*, Ms. Ximena Oñate and Mr. Camilo Vidal]; (c) contacting customers who have contracts with Coasin to supply the Products, interfering with our existing contracts; and (d) in general, all actions with the purpose of damaging Coasin's reputation and diverting its customers to VeriFone.

Exh. D-2, at ¶ 53 (bold emphasis added).

24. Coasin further admits in the Chilean Complaint that the act triggering the claim and giving rise the alleged damages is Verifone's termination of the VIP Agreement:

> Finally, it is essential to prove the existence of a causal link between the harmful action committed with willful misconduct and the damage caused.  To this effect, *"[t]here is a causal link when the intentional or negligent act -or omission- is the direct and necessary cause of the damage, when without it there would not have been any damage."*

> ….
>
> [C]ompliance with this requirement is simple: ***if (i) VeriFone had not forced the illegitimate termination of the Agreement (and could have done so, without objection, in a couple of months)***, for the sole purpose of entering into competition with Coasin; (ii) the Fraudulent Managers would not have shared with VeriFone Coasin's commercially sensitive information; (iii) the Fraudulent Managers would not have delayed purchase orders, impaired the business relationship with Coasin's customers in the provision of goods and services for the electronic payment industry; (iv) VeriFone was not now contacting Coasin's customers to provide them with same products that Coasin was distributing due to the agreement with Coasin, capturing for itself our represented business, particularly the future sale of equipment and support for the new ENGAGE platform, ***Coasin would not suffer the aforementioned damages.***

Exh. D-2, at ¶¶ 66, 68 (bold emphasis added).

### Coasin Withdraws its Application for Emergency Relief in Arbitration and Files a Request for Preliminary Injunction in the Chilean Action

25. On July 3, 2019, while settlement negotiations were still underway and while the Arbitration remained stayed, Coasin informed Verifone that it would continue its prosecution of the Chilean Action. Later, on or about August 23, 2019, Coasin informed Verifone that it intended to withdraw its Application for Emergency Relief in the Arbitration.

26. On August 28, 2019, Verifone filed in the Arbitration a motion to enforce the Arbitration Provision and to enjoin Coasin from asserting claims against Verifone in Chilean Action ("Motion for Anti-Suit Injunction"). That same day, Verifone also filed its Response to Coasin's Claims and Notice of Counterclaims, seeking approximately $4.2 million in damages from Coasin, among other relief.

27. In response, Coasin escalated the pace of the Chilean Action. On or about September 6, 2019—without serving Verifone with the Chilean Action—Coasin filed an *ex parte* motion demanding preliminary injunctive relief against Verifone from the Chilean Court ("Preliminary Injunction Motion"). A copy of that motion, along with a certified English translation thereof, are attached hereto as **Exhibits E-1** and **E-2**, respectively.

28. Through the Preliminary Injunction Motion, Coasin demanded that the Chilean Court issue an order on an *ex parte* basis that: (1) bars Verifone from selling its products to Transbank, Banco del Estado de Chile, and Multicaja, three customers that collectively represent nearly all of Verifone's Chilean business; (2) prohibits Verifone from marketing its next generation "Engage" family of products in Chile; and (3) "suspends the effects" of the acts alleged to constitute unfair competition   This is substantially the same preliminary injunctive relief that Verifone had sought in the Arbitration through its Application for Emergency Relief.

29. On September 26, 2019, the Chilean court denied Coasin's Preliminary Injunction Motion. A copy of the Chilean court's order, along with an English translation of that order, are attached hereto as **Exhibits F-1** and **F-2**, respectively. In essence, the Chilean court concluded that it was not appropriate to impose the injunctive measures sought by Coasin without hearing from Verifone and the other defendants and that Coasin had not proven any risk that required the Chilean Court's immediate action.

30. At approximately 11:00 p.m. EDT on September 30, 2019, the evening before the hearing on Verifone's Motion for Anti-Suit Injunction in the Arbitration, Coasin's counsel e-mailed the arbitrator to inform him that the Chilean court denied Coasin's Preliminary Injunction Motion. A copy of that email is attached hereto as **Exhibit G**.

31. Coasin further attempted to use the denial of the Preliminary Injunction Motion to its advantage during the hearing on Verifone's Motion for Anti-Suit Injunction, arguing before the arbitrator that Verifone could no longer prove the risk of immediate irreparable harm due to the Chilean court's denial of Coasin's request. *Id*. During the hearing, Coasin's counsel represented to the Arbitrator that, since Coasin's Preliminary Injunction Motion had been denied, it did not anticipate that Coasin would be taking any further imminent action in the Chilean Action. On this basis, the parties agreed that the arbitrator had until October 16, 2019, to issue an order on Verifone's Motion for Anti-Suit Injunction.

32. Despite these representations, Coasin has continued its efforts in the Chilean court to obtain an injunction barring Verifone from serving the Chilean market. On October 2, 2019,

Coasin filed another *ex parte* motion asking the Chilean court to reconsider its denial of Coasin's Preliminary Injunction Motion ("Reconsideration Motion").  A copy of Coasin's Reconsideration Motion, along with a certified English translation thereof, are attached hereto as **Exhibits H-1** and **H-2**, respectively.  On information and belief, Coasin's Reconsideration Motion is currently pending before the Chilean Court.

### The Arbitrator Denies Verifone's Motion for Anti-Suit Injunction for Lack of Jurisdiction, and Verifone Notifies Coasin of its Intention to Seek Relief from This Court

33. On October 16, 2019, the Arbitrator issued his decision on Verifone's Motion for Anti-Suit Injunction, denying the motion on the basis that he lacked jurisdiction to order the requested relief, stating as follows:

> In the end, however, the undersigned is persuaded that an anti-suit injunction should not be granted.  Absent specific federal or New York authority for the proposition that a private commercial arbitrator has the jurisdiction to issue an anti-suit injunction, the undersigned declines to read JAMS Rule 24(c) as granting that authority and does not deem it appropriate to grant this relief.  Courts carefully weigh issues of international comity and the potential interference with the sovereignty of foreign judicial systems before issuing anti-suit injunctions.  There is no precedent for a commercial arbitrator to do the same.

34. Notably, the Arbitrator did not deny Verifone's Motion for Antisuit Injunction with prejudice and explicitly found that courts may issue anti-suit injunctions.  A copy of the Arbitrator's order on that motion is attached hereto as **Exhibit I**.

35. Counsel for Verifone notified Coasin's New York counsel of its intention to seek a temporary restraining order and anti-suit injunction from this Court by telephone on October 22, 2019, and that Verifone's counsel intended on appearing in person on October 24, 2019.  Counsel then confirmed this notice in writing.  A copy of that email is attached hereto as **Exhibit J**.

**Coasin's Actions Threaten Imminent Irreparable Harm to Verifone**

36. The injunction relief that Coasin demands in the Chilean Action would, if ordered, irreparably harm Verifone and its business in Chile. The requested injunction would, for example, prevent Verifone from rightfully serving and supporting the Verifone customers in Chile, who would then be forced to transition to other payment brands. This could permanently harm Verifone's reputation and market share in the Chilean electronic payments market, causing extensive damages that will not be possible to fully quantify.

37. If Coasin is allowed to continue pursuing its Chilean Action—which could, for instance, result in orders or judgments inconsistent with those in the Arbitration—Verifone will also be irreparably harmed through the loss of its contractual right to arbitrate its dispute with Coasin.

**COUNT I**

**(Breach of Contract:  Temporary Restraining Order and Preliminary and Permanent Anti-Suit Injunction)**

38. Verifone incorporates its allegations in the foregoing paragraphs, as if fully set forth in this count.

39. Verifone and Coasin entered into the VIP Agreement and agreed to its terms, including the Arbitration Provision. Indeed, Coasin relied upon the Arbitration Provision in initiating the Arbitration against Verifone.

40. Coasin has breached the Arbitration Provision in the VIP Agreement by filing and continuing to pursue the Chilean Action, notwithstanding:  (1) Coasin's reliance on the Arbitration Provision in initiating the Arbitration against Verifone; and (2) Coasin's assertion of claims in the Arbitration that are substantively identical to the claims it has asserted in the Chilean Action.

41. Coasin's conduct has placed Verifone at risk of immediate irreparable injury, including:  (1) the permanent harm to Verifone's reputation and market share that would result if the Chilean court precludes Verifone from serving its customers in the Chilean market; (2) the

deprivation of its contractual right to resolve its disputes with Coasin in the agreed-upon forum, JAMS in New York, and subject to the agreed-upon laws and procedures; and (3) the possibility of inconsistent results in the Arbitration and the Chilean Action.

42. There can be no harm to Coasin once enjoined from prosecuting the Chilean Action because Coasin contractually agreed to the dispute resolution procedures in the Arbitration Provision after arms-length negotiations.

43. Verifone is without an adequate remedy of law.

44. Under these circumstances, the Court should grant immediate injunctive relief to enforce the Arbitration Provision and prevent Coasin's continued prosecution of the Chilean Action.

## COUNT II

### (Specific Performance)

45. Verifone incorporates its allegations in the foregoing paragraphs, as if fully set forth within this count.

46. The Arbitration Provision sets forth specific procedures and requirements for resolving disputes between Verifone and Coasin.

47. Coasin's filing and continued prosecution of the Chilean Action represents a continuing breach of the requirements of the Arbitration Provision.

48. Verifone is without an adequate remedy at law.

49. Verifone is therefore entitled to an order from this Court compelling Coasin to specifically perform its obligations under the Arbitration Provision, including by resolving its dispute with Verifone through the Arbitration, which Coasin initiated, and by taking the steps necessary to dismiss the Chilean Action.

## PRAYER FOR RELIEF

WHEREFORE, Verifone respectfully requests the following:

1. A temporary restraining order barring Coasin from prosecuting the Chilean Action against Verifone and from initiating or prosecuting any other action against Verifone except in compliance with the Arbitration Provision;

2. A preliminary anti-suit injunction barring Coasin from prosecuting the Chilean Action or initiating or prosecuting any other action except in compliance with its obligations under the Arbitration Provision and ordering Coasin to cause the dismissal of its claims against Verifone from the Chilean Action;

3. A permanent anti-suit injunction barring Coasin from prosecuting the Chilean Action or initiating or prosecuting any other action except in compliance with its obligations under the Arbitration Provision and ordering Coasin to cause the dismissal of its claims against Verifone from the Chilean Action;

4. An order compelling Coasin's specific performance under the Arbitration Provision, including its obligation to resolve its dispute with Verifone in (and only in) the Arbitration;

5. An order awarding Verifone the amount of damages proven at trial;

6. An order awarding Verifone interest, attorneys' fees, and costs, including those incurred in this Action and in the Chilean Action; and

7. Such other and further relief as this Court may deem just and proper.

Dated: October 24, 2019

Respectfully submitted,

WINSLETT STUDNICKY
   MCCORMICK & BOMSER LLP

*(signature)*

Joshua G. Graubart (SDNY Bar No. JG6791)
Usher Winslett (SDNY Bar No. UW4888)
6 E. 39th Street, 6th Floor
New York, New York 10016
Telephone: (646) 781-9321
Fax: (646) 224-8088
jgraubart@wsmblaw.com
uwinslett@wsmblaw.com

HOPKINS & CARLEY
John V. Picone III, Cal. Bar No. 187226
Christopher A. Hohn, Cal. Bar No. 271759
Mary Elizabeth Cirone, Cal. Bar No. 257951
(*Pro hac vice* admission pending)
The Letitia Building
70 South First Street
San Jose, CA  95113-2406
Telephone: (408) 286-9800
Fax: (408) 998-4790
jpicone@hopkinscarley.com
chohn@hopkinscarley.com
mcirone@hopkinscarley.com

*Attorneys for Plaintiff*
*Verifone, Inc.*